(No. 6127. December 29, 1934.)

STATE, Respondent, v. LEWIS HUNTER, Appellant.

[39 Pac. (2d) 301.]

E. L. Rayborn, for Appellant.

Bert H. Miller, Attorney General, and Ariel L. Crowley, Assistant Attorney General, for Respondent.

HOLDEN, J.—Appellant was convicted of murder in the second degree, and was sentenced to serve a term of from ten to twenty-five years in the state penitentiary, and appeals.

·There are but two questions in this case requiring consideration: (First) Did the court commit reversible error in giving instruction No. 23, defining malice; and (second), Did the court err in refusing to give appellant's requested instruction No. 19?

Instruction No. 23, defining malice, reads as follows:

"The court instructs the jury that malice includes not only anger, hatred and revenge, but every other unlawful and unjustifiable motive. Malice is not confined to ill will towards an individual, but is intended to denote an action flowing from any wicked and corrupt motive—a thing done with a wicked mind—where the fact has been attended with such circumstances as evince plain indications of a heart regardless of social duty and fatally bent on mischief; hence malice is implied by law from any cool or deliberate or cruel act against another, however sudden, which shows an abandoned or malignant heart."

Appellant argues that the trial court thus, in effect, instructed the jury that it would be justified in finding that an act was done with malice, if done in anger, which would make all homicides murder, if committed in anger, whereas, a killing done in anger might amount only to manslaughter, which is the unlawful killing of a human being without malice. And it might be further argued, with much force, that the above definition of malice is also erroneous because it seems to remove manslaughter from the catalogue of homicides, in that there are many unlawful and unjustifiable motives which have never been classed as malicious.

The above-quoted instruction was first considered by this court and condemned as misleading and erroneous in *State v. Rogers,* 30 Ida. 259, 163 Pac. 912, decided in March, 1917, the opinion having been written by Chief Justice Budge. We quote paragraph 4 of the syllabus in that case:

"That portion of an instruction in a trial for homicide which reads: 'Malice includes not only anger, hatred and revenge, but every other unlawful and unjustifiable motive,' is erroneous, as it tends to lead the jury to believe that they would be justified in finding that an act was done with malice if done in anger. Whereas a killing done in anger might amount only to manslaughter."

That instruction was later and again condemned by this court as misleading and erroneous in *State v. Dunlap,* 40 Ida. 630, 235 Pac. 432, decided in April, 1925, eight years after the Rogers case, *supra,* was decided. And still later, about ten years after the Rogers case, *supra,* was decided, this court, in *State v. Foyte,* 43 Ida. 459, 252 Pac. 673, again had under consideration an instruction identically like that above quoted, and emphatically stated: "This identical instruction has hitherto twice been declared erroneous," and for that and other reasons reversed the judgment of conviction against Foyte.

The Rogers case, *supra,* upon the question of malice, was bottomed upon *Commonwealth v. York,* 9 Met. (Mass.) 93, 104, 43 Am. Dec. 373, decided in March, 1845. In that case the Massachusetts court said:

"Malice, although in its popular sense it means hatred, ill will or hostility to another, yet, in its legal sense, has a very different meaning, and characterizes all acts done with an evil disposition, a wrong and unlawful motive or purpose; the wilful doing of an injurious act without lawful excuse."

Continuing, the Massachusetts court, quoting from the opinion of Mr. Justice Bailey, in *Bromage v. Prosser,* 4 Barn. & C. 255, said:

"Malice, in common acceptation, means ill will against a person; but in its legal sense it means, a wrongful act, done intentionally, without just cause or excuse."

In March, 1850, in *Commonwealth v. Webster,* 5 Cush. (Mass.) 295, 52 Am. Dec. 711, five years after the York case, *supra,* was decided, and seventy-five years before the Rogers case, *supra,* was decided in this court, the Massachusetts court reversed the York case, *supra;* in fact, the above-quoted instruction, held by this court in the Rogers case, *supra,* to be misleading and erroneous, was taken from the Webster case, *supra.* However, if that instruction is actually misleading and erroneous, as this court has so emphatically held in at least three different cases, extending over a period of many years, then that instruction must necessarily have misled the jury in the case at bar; therefore, and for that reason, appellant Hunter could not have had a fair and impartial trial.

The dissenting opinion in this case is bottomed upon the Washington case of *State v. Dolan,* 17 Wash. 499, 50 Pac. 472. In that case the same instruction, defining malice, was given as was given in the case at bar, and seriously objected to, as in this case, but the Washington court in the Dolan case, *supra,* held that the instruction was good, and that defendant Dolan had no serious ground of complaint. In other words, the Washington court, in the Dolan case, *supra,* held exactly the contrary of what was held in the Rogers case, *supra.* Nevertheless, it is stated in the dissenting opinion that "While I am still of the opinion that the portion of the instruction criticised in *State v. Rogers, supra,* was erroneous, I am not of the opinion that the instruction herein constituted prejudicial error or such as would justify a reversal, particularly in view of the facts disclosed by the record, in the instant case and in view of the fact of the immediate qualification and explanation by the court."

We have fully and carefully examined the record in the Rogers case, *supra,* and find that the trial court instructed the jury to consider the instructions as a whole, as the trial

court did in the case at bar, and, further, the instructions in the Rogers case, *supra,* defining the various degrees of murder, as well as malice, were substantially the same as in the case at bar, and, in addition to that, the explanation and qualifications of the term "malice" contained in the instruction given in the Rogers case, *supra,* and in this case, are identically the same.

For the purpose of completely removing objections to said instruction, made in *State v. Rogers, State v. Dunlap,* and *State v. Foyte, supra,* and in the case at bar, as well as the removal of the possibility of further like objections in future cases, to the effect that a jury would be justified, under such instruction, in finding that an act is done with malice, if done in anger, whereas a killing done in anger might be justifiable as in self-defense, or amount only to manslaughter, which is the unlawful killing of a human being without malice, and for the information of the bar, and future guidance of our trial courts, we have formulated, to be added at the close of the above-quoted instruction, the following:

You are further instructed that all anger is not malice; that one may be angry or indignant, and yet have no malice in his heart, or he may entertain a feeling of ill-will without thought of doing bodily harm to him who is the object of his dislike, yet anger or ill-will, or both, sometimes inspire and characterize malice which leads to murderous violence. It is such anger and ill-will, evidencing a wicked and corrupt intent, a condition of heart and mind having no regard for social or moral obligations, which constitutes legal malice within the meaning of this instruction.

We now come to the second question, to wit, Did the court err in refusing to give appellant's requested instruction No. 19?

That instruction, stated in the exact language of the statute, is as follows:

"When it appears that the defendant has committed a public offense, and there is reasonable ground of doubt in which of two or more degrees he is guilty, he can be

convicted of the lowest of such degrees only.'' (Sec. 19–2005, I. C. A.)

We have very carefully examined the instructions of the trial court, and find that while the court fully and correctly instructed the jury generally as to the law of reasonable doubt, it did not instruct the jury that if they found it established by the evidence, beyond a reasonable doubt, that the defendant had committed a public offense, but were in doubt as to which of two or more degrees he was guilty, he could be convicted only of the lowest degree included in the charge stated in the information. The appellant was clearly and unquestionably entitled to have the requested instruction given to the jury. (*Hatfield v. Commonwealth,* 230 Ky. 630, 20 S. W. (2d) 461; *Elliott v. State,* 105 Tex. Cr. 8, 284 S. W. 961; *Hayes v. Commonwealth,* 210 Ky. 449, 276 S. W. 160; *Coolman v. State,* 163 Ind. 503, 72 N. E. 568; *State v. Heft,* 148 Iowa, 617, 127 N. W. 830; *Arnold v. Commonwealth,* (Ky.) 72 S. W. 753, 24 Ky. Law Rep. 1921; *State v. Dolan,* 17 Wash. 499, 50 Pac. 472, 476; 30 C. J., sec. 666, p. 422, and cases cited. See, also, *Wells v. Territory,* 14 Okl. 436, 78 Pac. 124; *State v. McPhail,* 39 Wash. 199, 81 Pac. 683; *State v. Foley,* 174 Wash. 575, 25 Pac. (2d) 565; *Frank v. United States,* 42 Fed. (2d) 623.)

And further, the case of *State v. Dolan, supra* (cited in, quoted from, and relied upon, in the dissenting opinion), supports the majority view, and holds squarely against the minority opinion, on the second and last above-stated question, as an examination of that case will disclose. Later Washington cases approving and following the Dolan case, on that point, are: *State v. Donofrio,* 141 Wash. 132, 250 Pac. 951; *State v. Dale,* 110 Wash. 181, 188 Pac. 473; *State v. Dengel,* 24 Wash. 49, 63 Pac. 1104; *State v. Young,* 22 Wash. 273, 60 Pac. 650.

Upon the authority of the Rogers, Dunlap and Foyte cases, *supra,* and the Dolan case and other cases hereinbefore cited, the judgment must be reversed and a new trial granted, and it is so ordered.

Morgan, J., concurs.

WERNETTE, J., Concurring Specially.—I concur in the conclusion reached in the majority opinion, for the reason that part of instruction No. 23, defining malice, was erroneous and prejudicial. The objectionable part reads as follows:

"The court instructs the jury that malice includes not only anger, hatred, and revenge, but every other unlawful and unjustifiable motive."

That part of the instruction is a complete statement in itself, defining what malice may consist of. Malice, as thus defined, would remove manslaughter from consideration in this case.

Justice Campbell, speaking for the court, in *Nye v. People,* 35 Mich. 15, clearly points out the viciousness of such an instruction on malice. He states:

"The definition of malice given in this case would remove manslaughter from the catalogue of homicides. Every crime must be attended with an unlawful and unjustifiable motive. Malice includes those which are more wicked, but it does not include them all. There are many unlawful and unjustifiable motives which have never been classed as malicious. Manslaughter may in some cases be intentional. In such a case it differs from murder because it is provoked. It is not justifiable to take life under provocation, and yet the provocation may be serious enough to deprive the intentional killing of its malicious character, so that it is neither murder on the one hand nor justifiable or excusable on the other. It is a very serious crime, though not reckoned as done with malice."

Although the court gave other instructions defining malice, which were undoubtedly correct, the incorrect statement, given as above quoted, is in absolute conflict with the correct definition, and it is uncertain which of the two definitions of malice the jury followed in arriving at the verdict. The evidence is quite strong against appellant, tending toward his guilt. However, there is a real and substantial conflict in the evidence, and I am not satisfied in my own mind that the evidence is so overwhelming against appellant that the

jury could not do other than find him guilty of murder in the second degree. It is at least reasonably possible, under the circumstances, if the jury had been properly instructed as to malice, that appellant might only have been convicted of manslaughter.

BUDGE, C. J., Dissenting.—Appellant, charged with first degree murder, was convicted of second degree murder and appeals from such judgment. A recitation of all the facts appearing from the record will not be undertaken. It appears, however, that the deceased and one Peterson visited the Downing farm upon which appellant was engaged in driving a potato digger. Appellant left his work and went over approximately one hundred feet to where deceased and Peterson were engaged in conversation with Mr. Miller and Mr. Downing and addressed deceased in violent and abusive language. Deceased remonstrated and among other things said: "Wait a minute, I don't want any trouble with you." Whereupon appellant struck deceased violently; the deceased endeavored to get off his overcoat and the witness Peterson sought to interfere and said: "Give the man a chance to get his overcoat off." Appellant replied: "No, I will kill him." Appellant then knocked the deceased down and then repeatedly kicked him violently on the head, inflicting the wounds from which deceased died, and at the same time remarking, "I will kill the s—— b——." Appellant then went to the potato digger, returned with an iron bar, stepped up to where deceased lay on the ground unconscious, and said: "You Dutch s—— b——, get up and I will give you some more; I'll wrap this around your head; I'll kill the both of you."

There is sufficient competent evidence to establish the fact that the kicks inflicted by appellant's shod foot upon the deceased, while the deceased was down, caused the separation of the brain tissue from the skull causing hemorrhage into the left lateral ventricle of the brain and death. The evidence discloses that the attack was brutal and cruel. Prior to the attack appellant and deceased had

had some difficulty over an ejectment proceeding and appellant had threatened to "get" the deceased, and the evidence discloses a clear intention to carry out such threat.

There are but two questions, to my mind, that require consideration, the other assignments are without merit: First, Did the court commit reversible error in giving instruction No. 23 reciting as follows:

"The Court instructs the jury that malice includes not only anger, hatred and revenge, but every other unlawful and unjustifiable motive. Malice is not confined to ill will toward an individual, but is intended to denote an action flowing from any wicked and corrupt motive,—a thing done with a wicked mind—where the fact has been attended with such circumstances as evince plain indications of a heart regardless of social duty and fatally bent on mischief; hence malice is implied by law from any cool or deliberate or cruel act against another, however sudden, which shows an abandoned or malignant heart."

The first sentence of the foregoing instruction has been criticised by this court in former cases. (*State v. Rogers*, 30 Ida. 259, 163 Pac. 912; *State v. Dunlap*, 40 Ida. 630, 235 Pac. 432; *State v. Foyte*, 43 Ida. 459, 252 Pac. 673; *State v. Dong Sing*, 35 Ida. 616, 208 Pac. 860.) In *State v. Rogers, supra*, it was said:

"That portion of an instruction in a trial for homicide which reads: 'Malice includes not only anger, hatred and revenge, but every other unlawful and unjustifiable motive,' is erroneous, as it tends to lead the jury to believe that they would be justified in finding that an act was done with malice if done in anger. Whereas a killing done in anger might amount only to manslaughter."

While I am still of the opinion that the portion of the instruction criticised in *State v. Rogers, supra*, was erroneous, I am not of the opinion that the instruction herein constituted prejudicial error or such as would justify a reversal, particularly in view of the facts disclosed by the record in the instant case and in view of the fact of the immediate qualification and explanation by the court and when the whole charge on the subject is considered. (*State*

*v. Dong Sing, supra; State v. Rogers, supra; State v. Dunlap, supra.*) All errors committed by trial courts are not necessarily prejudicial, otherwise but few cases would not be subject to reversal. There must be such error as results in the denial of some substantial right of the defendant and prevents a fair and impartial trial. (*State v. Orr,* 53 Ida. 453, 24 Pac. (2d) 679; *State v. Upham,* 53 Ida. 340, 14 Pac. (2d) 1101; *State v. McKeehan,* 48 Ida. 112, 279 Pac. 616; *State v. Muguerza,* 46 Ida. 456, 268 Pac. 1.) While the forepart of the foregoing instruction has been disapproved by this court, instructions similar to that given have been held not erroneous in other jurisdictions. The Supreme Court of Washington in *State v. Dolan,* 17 Wash. 499, 50 Pac. 472, uses the following language with reference to an instruction such as that complained of:

"Appellant's first objection to the instructions of the court to the jury is that the court erred in stating to the jury in the first paragraph thereof that malice includes not only anger, hatred and revenge, but any other unlawful and unjustifiable motive. And, if the court had gone no further in defining malice, this objection would be tenable, for, as was said in *Nye v. People,* 35 Mich. 16, there may be unlawful and unjustifiable motives which are not reckoned as malicious. But the portion of the charge in question was immediately qualified and explained by the court; and, when the whole charge upon the subject is considered, we think the appellant has no serious ground of complaint, although the definition of malice as given by the court might, in fact, have been more concise and explicit."

See, also, 29 C. J. 1086, note 49 (a); 2 Brickwood Sackett Instructions, p. 1945, sec. 3062; *Commonwealth v. York,* 9 Met. (Mass.) 93, 52 Am. Dec. 717; *McCoy v. People,* 175 Ill. 224, 51 N. E. 777; *Jackson v. People,* 18 Ill. 269; *Parsons v. People,* 218 Ill. 386, 75 N. E. 993; *People v. Wilson,* 342 Ill. 358, 174 N. E. 398; *Davidson v. State,* 135 Ind. 254, 34 N. E. 972; *McDonel v. State,* 90 Ind. 320; *State v. Hunter,* 118 Iowa, 686, 92 N. W. 872; *People v. Borgetto,* 99 Mich. 336, 58 N. W. 328; *State v. McGuire,* 84 Conn. 470,

80 Atl. 761, 38 L. R. A., N. S., 1045; *Bennett v. State*, 15 Ariz. 58, 136 Pac. 276.

Coming now to the second point for consideration: It is contended that the court erred in refusing to give the following instruction at appellant's request:

"The Court instructs the jury that Section 8945 of the Idaho Compiled Statutes Provides:

" 'When it appears that the defendant has committed a public offense and there is reasonable ground of doubt in which of two or more degrees he is guilty, he can be convicted of the lower of such degrees only.' "

Disregarding the fact that this instruction is subject to the criticism that the Idaho Compiled Statutes therein referred to had, prior to the time the instruction was requested, been superseded by the Idaho Code Annotated, and to which it should have referred, I am of the opinion that the refusal to give the foregoing instruction did not constitute prejudicial error. The rule is established in this jurisdiction that a refusal to give a requested instruction, substantially covered by the instructions given, does not constitute prejudicial error. (*State v. Monteith*, 53 Ida. 30, 20 Pac. (2d) 1023; *State v. Fox*, 52 Ida. 474, 16 Pac. (2d) 663; *State v. Pasta*, 44 Ida. 671, 258 Pac. 1075; *State v. George*, 44 Ida. 173, 258 Pac. 551; *State v. Jurko*, 42 Ida. 319, 245 Pac. 685.) By instruction No. 40 the jury were informed that defendant was charged with murder and that said charge included first degree and second degree murder and voluntary and involuntary manslaughter, and that: "When a crime is by statute differentiated into degrees, it is the duty of the jury to determine by their verdict what degree thereof, if any, has been committed." By instructions Nos. 12 to 16, inclusive, the court differentiated and defined the degrees of murder and manslaughter, and by instruction No. 46 correlated the various degrees of murder and manslaughter with the instructions on reasonable doubt, pointing out that if a reasonable doubt was entertained by the jury as to any of the essential elements marking the degrees of crime, the conviction must be only

of the lower degree or the defendant must be acquitted. Instruction No. 48 instructed:

"The Court has not attempted to embody all of the law in this case in any one instruction. In considering any single instruction, you must consider it in connection with all other instructions and construe them in harmony with each other. You are not at liberty to single out a particular instruction and base your verdict upon it alone."

An examination of the instructions given, considered as a whole, discloses conclusively an absence of prejudicial error. The instructions were fair and an examination of the record is sufficiently convincing to justify the statement that appellant had a fair and impartial trial and that the judgment should be affirmed, and it should be so ordered.

Givens, J., concurs.